SEND

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
## CIVIL MINUTES - GENERAL

| Case No. | CV 05-3483 PA (Mcx) | Date | January 9, 2006 |
|---|---|---|---|
| Title | Erick T. Coomes, et al. v. Akbar Shamji | | |

Present: The Honorable   PERCY ANDERSON, UNITED STATES DISTRICT JUDGE

| C. Kevin Reddick | Not Reported | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

Attorneys Present for Plaintiffs:          Attorneys Present for Defendants:

None                                                              None

**Proceedings:**   IN CHAMBERS - COURT ORDER

### I.    Background

Before the Court is defendant Akbar Shamji's ("Defendant") Motion to Set Aside Default (Docket No. 15). Defendant is a citizen of Great Britain who lives and works primarily in London. Defendant makes his living investing and participating in various business ventures in the entertainment industry. Defendant's ventures include: London Cut Films, Ltd., CPEC India, 9 Akii Bua Rd. Ltd. (Uganda) and Bardic Records / Visigoth Entertainment Holdings, LLC ("Bardic"). Bardic is a Delaware limited liability company with its primary place of business in New Jersey.[1] Defendant admits that he has played an active role in the management of Bardic, is a "principal," and made "several" visits to the Bardic offices in 2005. Defendant also admits that he was a shareholder in Soul Life Entertainment Holdings and Soul Life Records (collectively "Soulife Entertainment and Records") for at least the period spanning September 2000 through May 2001.

Plaintiffs are musicians and musical composers who maintain that Defendant has wrongfully denied them their ownership rights in various musical compositions published, distributed and otherwise commercially exploited by Defendant by and through Soulife Entertainment and Records. In a prior lawsuit, initiated by Plaintiffs in 2001, default judgment was entered against Soulife Entertainment and Records based on nearly identical allegations of infringement, fraud, and breach of contract as are presented before the Court in this action. In the 2001 action, the district court held:

> (n)   Based upon the representations of [Defendants], during the period of September, 2000 through May 2001, Plaintiffs ... authored and created in whole or in part, approximately fifty (50) musical compositions which they provided to the Soulife Defendants.
>
> (o)   The Soulife Defendants have caused to be commercially exploited,

---

[1]   Bardic Records is an unincorporated entity wholly owned by Visigoth, with its offices in the same location as Visigoth's in New Jersey.

SEND

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 05-3483 PA (Mcx) | Date | January 9, 2006 |
| Title | Erick T. Coomes, et al. v. Akbar Shamji | | |

> in interstate commerce, certain of the musical compositions
> authored in whole or in part by Plaintiffs. The Soulife Defendants,
> in their exploitation of the [Plaintiffs'] musical compositions, have
> not provided authorship or ownership attribution, have not
> identified Plaintiffs as co-authors and co-owners of these
> commercially exploited musical composition ...

Defendant, in his individual capacity, was not a party to the 2001 action. In May 2005, Plaintiffs initiated this lawsuit against Defendant for his role in the alleged fraudulent scheme and infringement. The complaint raises causes of action for: (1) declaratory relief, (2) federal unfair competition; (3) intentional misrepresentation; (4) negligent misrepresentation; (5) breach of contract; and (6) unjust enrichment. Plaintiffs allege that Defendant was properly served with the summons and complaint by substitute service. Plaintiffs' counsel, in her declaration, states that she verified Defendant's business address by referencing actions filed by Visigoth in New York[2/] and by calling the Bardic offices. When she called Bardic, she was told that Defendant worked there, and "was usually in the office." Thereafter, Plaintiff attempted to serve Defendant personally at the Bardic's offices, but after multiple unsuccessful attempts ultimately resorted to serving Defendant by substituted service by leaving copies of the complaint and summons with Matt Roth, a Bardic employee, at its office in New Jersey. Thereafter, copies of the summons and complaint were also mailed to the Bardic office.

Defendant acknowledges that he knew of Plaintiffs' repeated attempts to serve him and retained counsel to represent him in this action. However, Defendant did not respond in any manner until October 14, 2005, when his attorney sent a letter to Plaintiffs' counsel indicating his belief that Defendant had not been properly served. Until the present motion, Defendant had never filed anything with the Court or otherwise appeared in this action.

Upon Plaintiffs' application, the clerk entered default against Defendant on October 31, 2005. Defendant now seeks to set aside the default on the grounds that: (1) he was never properly served; (2) the default cannot be attributed to Defendant's culpable conduct; (3) Defendant has meritorious defenses to the action; and (4) no prejudice would result to Plaintiff from setting aside the default.

## II.     Standard

---

[2/]    Visigoth filed a complaint in New York state court in which it asserts that Bardic's principal place of business is "26 Broad Street, 2nd Floor, Red Bank, New Jersey 07701" and that its principals are "Jack Ponti and Akbar Shamji." The Court may properly take judicial notice of the complaint, which is a matter of public record. Fed R. Evid. 201; see also Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir.2001) (stating that judicial notice of matters of public record are permissible); Roundtree v. Adams, No. 101CV06502OWWJLO, 2005 WL 3284405, at *2 (E.D. Cal. Dec. 1, 2005) (defining "matters of public record" to include "pleadings, orders, and other papers filed with the court").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 05-3483 PA (Mcx) | Date | January 9, 2006 |
| Title | Erick T. Coomes, et al. v. Akbar Shamji | | |

Federal Rule of Civil Procedure 55(c) provides that a court may set aside the entry of a default "[f]or good cause shown." "The 'good cause' standard that governs vacating an entry of default under Rule 55(c) is the same standard that governs vacating a default judgment under Rule 60(b)." Franchise Holding II, LLC v. Huntington Restaurants Group, Inc., 375 F.3d 922, 925 (9th Cir. 2004). As a result, in determining whether to vacate the entry of a default or a default judgment, the district court should consider "whether the defendant's culpable conduct led to the default; whether the defendant has a meritorious defense; and whether reopening the default ... would prejudice the plaintiff." TCI Group Life Ins. Plan v. Knoebber, 244 F.3d 691, 696 (9th Cir. 2001). "This tripartite test is disjunctive. Hence, the trial court's denial of a motion to vacate a default judgment will be affirmed if the defendant's own culpable conduct prompted the default." In re Hammer, 940 F.2d 524, 526 (9th Cir. 1991) (citations omitted). The party seeking to vacate a default judgment bears the burden of demonstrating that the factors favor vacating the default. TCI Group Life Ins. Plan, 244 F.3d at 696.

Although motions for relief from entry of default under Rule 55(c) apply the same "good cause" standard as motions to vacate default judgments, the Ninth Circuit "recognize[s] that the standards for setting aside entry of default under Rule 55(c) are less rigorous than those for setting aside a default." Hawaii Carpenters' Trust Funds v. Stone, 794 F.2d 508, 513 (9th Cir. 1986). Because judgments on the merits are favored, "appropriate exercise of district court discretion . . . requires that the finality interest should give way fairly readily to further the competing interest in reaching the merits of a dispute." TCI Group Life Ins. Plan, 244 F.3d at 696.

**III. Analysis**

**A. Defendant Was Properly Served**

Defendant's first argument is that the default must be vacated because he was never properly served. "Due process requires proper service of process for a court to have jurisdiction to adjudicate the rights of the parties ... Therefore, if service of process was not proper, the court must set aside entry of default." O.J. Distrib., Inc. v. Hornell Brewing Co., 340 F.3d 345, 353 (9th Cir. 2003).

Federal Rule of Civil Procedure 4 sets forth the acceptable methods of service of the summons and complaint. "'Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint.'" Benny v. Pipes, 799 F.2d 489, 492 (9th Cir. 1986) (quoting United Food & Commercial Workers Union v. Alpha Beta Co., 735 F.2d 1371, 1382 (9th Cir. 1984)). It permits service of process upon an individual within the United States by any means authorized by "the law of the state in which the district court is located, or in which service is effected." Fed. R. Civ. P. 4(e)(1).

Under California law, "[i]f a copy of the summons and complaint cannot with reasonable diligence be personally delivered to the person to be served ... a summons may be served by leaving a copy of the summons and complaint at the person's ... usual place of business ... in the presence of ... a person apparently in charge of his or her office, place of business, or usual mailing address ... and by thereafter mailing a copy of the summons of the complaint by first-class mail ... to the person to be

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
## CIVIL MINUTES - GENERAL

| Case No. | CV 05-3483 PA (Mcx) | Date | January 9, 2006 |
|---|---|---|---|
| Title | Erick T. Coomes, et al. v. Akbar Shamji | | |

served at the place where a copy of the summons and complaint were left." Cal. Code Civ. P. § 415.20. The "reasonable diligence" requirement may ordinarily be fulfilled by "two or three attempts at personal service at a proper place." Bonita Packaging Co. v. O'Sullivan, 165 F.R.D. 610, 613 (C.D. Cal. 1995). The declaration of Andrew Pawelek, submitted by Plaintiff, establishes that he tried on two separate occasions to personally serve Defendant at the Bardic offices. That these two attempts were unsuccessful is sufficient to justify resort to substituted service.

Defendant's principal arguments against the validity of service are: (1) that the Bardic offices are not his "usual place of business" and (2) that Matt Roth was not an appropriate agent to receive substituted service on his behalf at that location. This Court finds these arguments unpersuasive.

It is well-established that the term "usual place of business" includes "a defendant's customary place of employment as well as his own business enterprise." Cal. Code Civ. P. § 415.20(b), Judicial Comment. Defendant acknowledges that he is a principal of Visigoth and plays an active role in its management as well as that of Bardic. Furthermore, both Plaintiffs' counsel and their process server confirmed that the Bardic offices were Defendant's workplace, where he maintained a regular office, and conducted substantial business. The fact that Defendant may have other business offices does not render the Bardic office an inappropriate location for service. In light of Defendant's admission that he has a principal ownership interest in Visigoth and Bardic, the Court finds that the Bardic office in New Jersey is Defendant's "usual place of business," where substituted service was properly effectuated.

The Court further finds that Matt Roth was an acceptable "person in charge" to receive substituted service of process on his behalf. "'Service must be made upon a person whose relationship with the person to be served makes it more likely than not that they will deliver process to the named party.'" Ellard v. Conway, 94 Cal. App. 4th 540, 546, 114 Cal. Rptr. 2d 399, 403 (2001) (quoting Bein v. Brechtel-Jochim Group, Inc., 6 Cal. App. 4th 1387, 1393, 8 Cal. Rptr. 2d 351 (1992)). Factors courts have looked to in determining whether the recipient was able to accept process include: whether the person would know what to do with the papers, the scope and nature of his authority, the availability of the defendant, the plaintiff's diligence in attempting to track down the defendant, and whether the defendant actually received the papers. See Direct Mail Specialists, Inc. v. Eclat Computerized Techs., 840 F.2d 685, 688-89 (9th Cir. 1988) (finding that service on receptionist established jurisdiction over the defendant-corporation); Ellard, 94 Cal. App. 4th at 547, 114 Cal. Rptr. 2d at 403 (finding substituted service on the Postal Annex Manager, in charge of distributing the mail, acceptable); Bein, 6 Cal. App. 4th at 1393, 3 Cal. Rptr. 2d 351 (finding substituted service on guard at the entrance to a gated community acceptable); Ludka v. Athana Corp., 25 Cal. App. 3d 316, 321, 101 Cal. Rptr. 615, 618 (1972) (finding delivery to the building's receptionist who was not the defendant's personal secretary sufficient for substituted service).

Matt Roth was the person Plaintiffs' counsel spoke to on the phone when she called Bardic. He also appeared to be the only person available in the office when Plaintiffs' process server made his multiple attempts to serve Defendant. Furthermore, Defendant accedes that he received actual notice of the action. Defendant's only argument is that Roth, as a low level administrative assistant, was not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES - GENERAL

| Case No. | CV 05-3483 PA (Mcx) | Date | January 9, 2006 |
|---|---|---|---|
| Title | Erick T. Coomes, et al. v. Akbar Shamji | | |

authorized to accept service on his behalf. However, express authority to accept service is not a requirement for effective service of process. Cf. Direct Mail Specialists, 840 F.2d at 688 (holding that service of process "is not limited solely to officially designated officers, managing agents, or agents appointed by law for the receipt of process"). Based on these facts, the Court finds that service upon Roth was more likely than not to result in actual delivery of the papers to Defendant. Therefore, it concludes that Defendant was properly served by substituted service in this action.[3/]

### B. Defendant's Culpable Conduct Was Responsible for Entry of Default

Having concluded that service of process upon Defendant was sufficient, the Court now turns to whether Defendant has shown "good cause" for his failure to appear in this action. The Court finds that he has not. Where the defendant's own "culpable conduct was responsible for entry of the default," he vitiates any grounds for relief. Direct Mail Specialists, 840 F.2d at 690. "If a defendant 'has received actual or constructive notice of the filing of the action and failed to answer' his conduct is culpable.'" Id. (quoting Meadows v. Dominican Rep., 817 F.2d 517, 521 (9th Cir. 1987), cert denied, 108 S. Ct. 486, 98 L. Ed. 2d 485 (1987)); In re Hammer, 940 F.2d at 526.

There is no question that Defendant received actual notice of the action before his default was entered. He even retained counsel to monitor the docket for the case. Cf. TCI Group Life Ins. Plan, 244 F.3d at 699, 699 n.6 ("[I]t is fair to expect that individuals who have previously been involved in litigation or have consulted with a lawyer appreciate the consequences of failing to answer and do so only if they see some advantage to themselves."). Prior to entry of default, Defendant's counsel contacted Plaintiff's counsel and explicitly expressed its refusal to participate in the judicial proceedings based on his mistaken belief that service of process had been inadequate.[4/] In doing so, Defendant assumed the risk of ignoring the proper procedure for challenging the sufficiency of process. See Id.; Direct Mail Specialists, 840 F.2d at 690 (imputing knowledge "of the dangers of ignoring service of process" to members of the legal profession); see also Hartford Casualty Ins. Co. v. Malavos, No. 1:04 CV 6016 OWW LJO, 2005 WL 1836916, at *6 (E.D. Cal. Aug. 3, 2005) (characterizing willful failure to respond to a complaint, even if the party believes it has been ineffectively served, as culpable conduct).[5/]

---

[3/] At the time of delivery, Roth was informed of the contents of the papers and properly directed to give them to Defendant by an experienced process server. Copies of the summons and complaint were thereafter mailed to the Bardic offices. Thus, Plaintiff successfully served Defendant by substituted service of process.

[4/] The Court notes that this letter, which was in informal correspondence between the parties and was never sent to the Court, does not constitute an "appearance" evidencing an intent to defend the action. Franchise Holding II, LLC, 375 F.3d at 928. Thus, Defendant cannot offer the letter as support for his motion to vacate the default.

[5/] The appropriate response to an erroneously served complaint "is not to ignore the complaint, but to move to dismiss it for insufficiency of service of process" pursuant to Fed. R. Civ. P. 12(b)(5).

SEND

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-3483 PA (Mcx) | Date | January 9, 2006 |
|---|---|---|---|
| Title | Erick T. Coomes, et al. v. Akbar Shamji | | |

Thus, Defendant is solely responsible for failing to respond in a timely manner to the Complaint.

Furthermore, Defendant has failed to "present the district court with specific facts that would constitute a defense" as required in a motion to set aside default. Franchise Holding II, LLC, 375 F.3d at 926. His bare allegations that several defenses, including expiration of the statute of limitations and collateral estoppel, apply are not enough to raise a "meritorious defense" against Plaintiff's complaint. Id. ("A 'mere general denial without facts to support it' is not enough to justify vacating a default or default judgment.") (quoting Madsen v. Bumb, 419 F.2d 4, 6 (9th Cir. 1969)). Without more factual support, there is no grounds for vacating the entry of default. Hawaii Carpenters' Trust Funds, 894 F.2d at 513 ("A party in default ... is required to make some showing of a meritorious defense as a prerequisite to vacating an entry of default").

Finally, the Court finds that the risk of prejudice favors denial of Defendant's motion. Plaintiffs have shown that their "ability to pursue [their] claim will be hindered," beyond "simply delaying resolution of the case" if Defendant's motion is granted. TCI Group Life Ins. Plan, 244 F.3d at 701 (quoting Falk v. Allen, 739 F.2d 461, 463 (9th Cir. 1984)). In the related action against Soulife Entertainment and Records, no appearances were made on behalf of the defendants and Plaintiffs have not been able to collect on the judgment. Following judgment in that case, Plaintiffs sought to contact Defendant - as a principal of Soulife Entertainment and Records - multiple times to no avail. They engaged in a lengthy investigation to ascertain his whereabouts that finally lead them to Bardic. Then, throughout the course of this litigation, which Defendant was well aware of, Defendant failed to contact either the Court or opposing counsel or reveal his whereabouts so as to permit proper personal service and adjudication on the merits. Defendant's evasive behavior leads the Court to conclude that granting his motion would likely result in "tangible harm," "increased difficulties in discovery" and renewed opportunities to evade and manipulate the judicial process. Id. at 700 (quoting Thompson v. American Home Assur. Co., 95 F.3d 429, 433-434 (6th Cir. 1996)).

## IV. Conclusion

For all of the foregoing reasons, Defendant's Motion to Set Aside the Default is denied. Plaintiffs are hereby directed to file a motion for default judgment or other appropriate dispositive motion with respect to Defendant on or before January 27, 2006. Failure to file said dispositive motion by January 27, 2006, will result in dismissal of this action without further notice by the Court.

IT IS SO ORDERED.

Initials of Preparer _____

cc

---

Hartford Casualty, 2005 WL 1836916 at *6.